Please, the Court, David Brower for the lead plaintiff. This is a federal securities class action and an appeal from a dismissal under 1286. We have noted numerous errors by the district court in the brief, so I'm not going to belabor them and waste the Court's time today going item by item. I'd like to touch on some key factors. First of all, the district court apparently required that in order to state a claim under Section 10b of the Securities Exchange Act of 1934, that the plaintiff allege an affirmative misrepresentation. And throughout the opinion, the Court over and over and over again says where is the false statement singular. Nowhere in the decision does the Court analyze the question of whether or not the plaintiff's misrepresentation is true. Now, the District Court, as I understand it, did not make a statement of material omissions that made the statements made false and misleading, and this was primarily an omissions case. Now, the district court seemed to be saying, I can't say that I share your view. It seems to me what he was really saying is that, look, you're alleging these misrepresentations, either affirmative or omissions, but he looks at the actual statements and he doesn't see the two things as being equivalent. Well, that may be, Your Honor, but that brings us to another problem. The defendants promoted the idea that the Tellab's standards for analyzing SIENTA in a Federal securities action also applied to the question of falsity. If you look at page 16 of their brief, they're still promoting that theory, that the Tellab's standard, where you consider matters that are contra to those alleged in the complaint, and you can consider negative inferences that might be raised by the facts, apply, and that does not apply to any element of a Section 10b claim other than the element of SIENTA. That's clear in the Tellab's case, and, in fact, it's clear in the statute. The falsity provision that is in the PSLRA is nothing more than a codification of Rule 9b. It's the who, what, when, where, how provision. This complaint alleges, and maybe I should back up, and what I want to say about that is it appears that the Court, as well as at the invitation of the defendants, conflated the standard for review of SIENTA under Tellab's with the standard for review of Falsity, which is governed solely by traditional 9b standards in this circuit under Glenfed and under Twombie and Ashcroft, in which you take all allegations as true, you draw all inferences most favorable to the pleader. That was not done here. The facts of this case are relatively simple, and somehow we didn't get it across to the Court. This is a case where a company over a 10-year period developed a product that was to be the centerpiece of not only its current, but future business prospects. What occurred is they developed an incomplete product. They didn't have some of the hardware necessary to make the product work, and they didn't have software to make the product work. And as a result of that, the district court went back and looked at each one of these delegations and found them wanting. And I read what the district court said about them. If the district court was right about that, it's a pretty strong argument. Was the district court wrong in his analysis of the context in which they were made? That was his point. Yes, Your Honor. The district court was in error in the context. And, of course, this is a de novo review. If the court reviews the complaint, which is an operative document, even on this case, the complaint goes through a series of statements made by the defendant regarding the product, its functionality, its prospects, backlog with respect to the product, its efforts to sell the product. And the complaint then alleges that nowhere does the company allege it doesn't have the software, doesn't have the antennas, doesn't have certain other hardware features, and that people didn't understand. The complaint then alleges that the company didn't have the software, didn't have  understand. They led the market to believe that this was a fully functional product that they were selling, which a casino would expect, and that, in fact, it was not a fully functional product and that it wasn't going to have much of a future as a product until they completed the problems that were missing. And the complaint then alleges that the company didn't have the software, didn't have the hardware, didn't have the antennas, didn't have the antennas, didn't have the security gambling chip, and that, in fact, had they disclosed the truth, that is, that they didn't have the fully functional software to run this product, that they didn't have until November even a deal to sell the piece of hardware needed to make their chip work, that investors would have understood the product had a limited value. And what happens at the end of the class period, Your Honor, is they finally disclose. Big orders are being delayed. After the class period, they disclose. Those orders are essentially canceled subject to all sorts of redevelopment efforts on these chips because the customers realize the chips didn't have the value that the company was pushing.   It was a violation of the company's security law. So that each time the defendant spoke with respect to the chip and its functionality and its future for the company, they were engaging in a violation of the security laws by not also disclosing that but we don't have the software. It's not yet fully functional. I'm trying to understand your point. If I sell distributors. Okay. Okay. I'm not a car person, but okay. Thing that sort of sends the electricity around. So I sell distributors and I say we've got the greatest little distributors you've ever seen in your lives. They're fantastic. But I don't sell cars. So you want my distributor, you buy my distributor and it really is the greatest thing since sliced bread as distributors go. But I don't sell cars. And I don't say I sell cars. And I don't purport to sell cars. What's wrong with what I'm doing? There's nothing wrong with that, Your Honor. But if I sell chips and I don't sell computers and software, there is something wrong. Yes. This particular case, and I'll explain why. Explain. Sure. The problem here is the chip itself was the entire product. The purpose of the chip is that, as I think your complaint made clear, it's a security chip. It's not like a, it's not a microchip. It's the actual gaming chip that's supposed to be able to be tracked no matter where you go with it and if people try and sneak out of the casino with it or try and forge it or do things like that, it's supposed to be a high-security, high-tech chip. Without software, it's worthless. It might as well be the chip you buy at the store on the corner. It doesn't work without the car either. So is my distributor. Well, but your distributor. And it's high-tech. It's the greatest distributor of all time. We've stipulated that. And it does everything distributors can do and it does it fantastically well. Let me give you a better analogy and I think you'll see the problem. I don't think that would be better than my analogy. I don't know. As I said, I'm not a car person so I may have some trouble with it. The issue is more like, let's say you're in the, you make computers, but no one in the world makes a suitable software to run it with. All you've sold is a light box. And the fact is what they led the market to believe, and they in fact said it in the middle of the class period, that they were selling their casinos a total security package. Well, it wasn't a total security package. Well, and maybe you better get the specific statements. Because the disconnect that I think the district court found, and frankly it's one that I've been troubled by, is that it seems to me the few times you pick up a particular statement and analyze it, the inference you're drawing from it is a whole lot broader than the statement says on its surface. So it's one thing. If they announced to the world, we've got a complete security system here. We've got everything from soup to nuts. That might be a problem. But I haven't found a statement that's like that. Well, the November 20, 2006 statement talks about their strategic alignment with progressive gaming, which is another competitor, which is a competitor. And they stated it would be able to provide an all-encompassing platform to casinos, which would include everything from gaming currency to equipment to software that analyze and track data. The problem is the deal with gaming wasn't a software deal. Gaming was the company that controlled the antennas for the frequency. So that at this point in time, they're telling the world, here we have a all-encompassing platform. In the defendant's brief, they said, well, we didn't say complete platform, or I think that's the same thing. And they didn't have that. They had a different product and put aside that they also didn't disclose the negative and adverse consequences of a deal with progressive, which allowed progressive to buy gaming chips at below cost and undercut them with their own competitors. As a competitor, this is a situation where the market was led to believe that they were selling a security product. Well, it's not a security product if it has no software. It's like selling the security cameras and not having the television set in the office for the guard to watch. And that's what went on here. And the district court, first of all, never analyzed those statements. But district court has looked at some of the statements regarding income. And it's very important, Your Honor, this is not an accounting case. And it shouldn't be confused as one. And the district court seemed to approach it as an accounting case. The issue about the accounting goes to the court. Thank you, Your Honor. We'll hear from the Defendant's Counsel. Good morning. Mark Ferrario appearing on behalf of appellees from the law firm of Greenberg Trauring with me is Tammy Cowden from our firm. I'm going to try to be as brief as I can, because I think your questioning and counsel's inability to answer your questions has really pointed out the problem. Well, I gave this one particular statement now to look at. That's the November 20, 2006 statement. And the statement, as you reported to us, is pretty broad. So why isn't that a basis for the lawsuit? Well, what we're announcing there is that we're affiliating. We're announcing a new launch of a new combination with PGIC. Which, again, this is only a partial quote. According to the appellant's brief, this partnership would be able to provide a, quote, all-encompassing platform, close quote, which would include, quote, everything from gaming currency to equipment to software that analyzes and tracks data. That's right. Close quote. And he says the software wasn't there. That's exactly. Well, that's what you have to look at. This is where they confuse statements. And really, I've struggled to find out what their case is about. I heard today, as you heard him say, this is not an accounting case. Yet, if you look at page 24 of their reply brief, they say that some of the allegations that they made were primarily related to the finance and accounting departments. But having said that, what we're announcing in November is that we are going forward with a new partner to develop and market not only the hardware, which is the chip or the distributor, as you'd like, but now we're going to combine with them and offer software. We're announcing something going forward. The district court was spot on. And I must say that when you look at the requirements under the PSLRA and Rule 9, you should be able to discern what it is someone is claiming in these types of cases. You have particularity requirements for a reason. Now, the district court gave them a chance. The district court went through the first complaint that they filed, and there's some debate as to whether this is the third or the ‑‑ I don't even need to get to that, because the district court analyzed their first complaint. And the district court said, I'm going to give you a chance to go back and get this right, and pointed out a number of concerns. They came back, and basically all they did was reshuffle the deck. They didn't avail themselves of an opportunity to make clear and concise statements that were either false or misleading. And the district court, I don't think, was ‑‑ should have been saddled with the burden of sifting through some 50‑some pages of the complaint that they filed to try to find something that might salvage their complaint. The district court looked at this and took the distributor car example, you can say computer box versus software example, and said, it doesn't make sense. My client, Gaming Partners, didn't go out and tell the world that we have chips and software and we can provide you an entire package that can do player tracking and all the other things that some companies want and some don't. And that's why you have software developers out there that cater to the casino industry. What my client said was, we're going to develop a chip. And we have the chip. And we're going to put something in the chip. And what we're going to put in the chip is something that can be detected by the appropriate hardware and software. That's what my client said. And that's what they provided. And that's what the district court judge looked at and said, I don't see how you can allege that these statements were false. My client never went out and said, I'm a software manufacturer, that I'm going to develop specialized software that can track these chips around the world or can sit there and count them as somebody's betting or that can track the play throughout the casino. They never said that. And the district court was right the first time. And the district court was right the second time. And what have the plaintiffs said? The plaintiffs say the district court didn't get the case. That we don't get the case. How could you meet the particularity requirements of the PSLRA in Rule 9 if nobody can understand your case? It's not that tough to plead. This statement was made on this day, and it was false because of this. What they've done is they've come with a shotgun pleading filled with, I believe, comments from confidential informants that don't meet any of the standards that have been articulated by this court or courts elsewhere. You've got a bunch of speculative statements, hearsay on hearsay. The confidential informants don't demonstrate in many respects that they were part of a department and had particular knowledge of the falsity of any statement. And the district court commented on that. The district court just didn't look at one thing. The district court made it clear in his opinion. And you have to look. This is the second time around, so I don't think you can look at this as a vacuum. And the district court said, I've evaluated your claim. Your case, now I guess it's all about technology. When it started out, it was first about accounting. When that didn't get him over the hump, now it's about technology. And the district court said, your claims don't make sense. You can't point me to a false statement. And then the district court analyzed the statements made by the confidential informants and concluded that under the standards enunciated by this court, it doesn't add up. It can't plug the holes. And rather than accept that, and the briefing, I would concede, got a little bit acrimonious. There were personal attacks on us that we didn't understand their case. You're right. I don't understand it. I don't understand it when I'm looking at the requirements of the PSLRA and the requirements that they're required to meet. I don't understand why they pled this case. So when we look back, what do we have? We have a plaintiff that's been given two shots, you could say three shots, to get it right. They didn't do that. The district court dismissed the case and said, you know what? After having given you two shots and you come back and regurgitate essentially the same statements and you gin up some confidential informants that don't meet the standards, we're not giving you another chance. And I don't think the district court had to give them another chance. Again, as I stated, this is not that difficult. It's not that difficult to get it right. I'll point out some other issues that I think can be resolved regardless of what you do with the overall opinion. You've got no allegations in the complaint that tie Ms. Karatay to any of the activities, none of the day-to-day type activities. You've got no allegations in the complaint that tie Mr. Endy to any of the activities, yet you have them grouped in with the broad definition of defendants. You have the group pleading problem that we addressed. And they don't contest that. So I think no matter what you do here, any claims against Karatay and Endy should be dismissed. Endy, they attempt to loop him in here based upon stock sales, but again, they don't meet the requirements set out by this Court that if you're going to come in and say there's something suspicious when stock is sold, you have to show us a pattern, you have to give us a history, you have to show something that would indicate that this was out of the norm such that an adverse inference can be drawn. They don't do that. Let me ask you to focus on the same issue I started with and try to put it this way. In your brief, page 2 at the beginning, there's a statement. Nothing in any statement cited by GPIC conveys an impression that it did anything other than manufacture and sell gaming chips. And that, I take, really be the operating premise of the argument. And the question I put to Plaintiff's counsel was, okay, what broader statement is there? How can you fairly infer that a complete system of some kind is being sold or that they're telling the world that? And he identifies the November 20, 2006 release, which, as quoted in the complaint, says, we believe the casinos will need an all-encompassing platform, everything from gaming currency to equipment to software that analyzes and tracks data in order to make the best use of high-speed RFID gaming technology. Now, there's another quote. We have created a robust suite of high-speed RFID products we expect will better address the needs of the global casino gaming industry. Now, I take your position to be that that's a statement that refers with the RFID. It's not pronounceable, so I can't say RFID. Radio frequency. But RFID or whatever you'd say. Focusing specifically on that, and you believe that a fair reading of the statement would not include the other parts, including the all-encompassing platform that's referred to in the first quotation. We're talking about moving forward with a new venture, with PGIC. What is happening here, in part, maybe I can put this in. It says, we have created and will continue to create. I don't know if that's entirely, this is often the future we'll get there. It seems to say we're there. With PGIC, we're going forward. You're right. We started out, we're just manufacturing the chip. This is an evolutionary process. It's hard to believe that something as simple as putting a chip in a chip is that important. But it was. Okay? Because how you handle them, all sorts of issues. Our company came up with the chip, with the, in effect, the distributor. Okay? But it's not going to work without software. Everybody knows that. Conspicuously absent from anything in here, anything they've pled in the three times they've got it, where's the complaints from the customers? Where, they can't point to one order that was rejected. They can't point to, where's the lawsuits from the customers when we're selling the chip? But he's pointed to sales that weren't consummated, and there are references to that. I don't recall them particularly. But he doesn't cite the reason why they weren't consummated. It doesn't, you know, we can all think back in 2006, 2007, looking forward, what we had on the horizon. They don't, he doesn't say that the sales weren't consummated because we didn't have software to complete packages, or for whatever reason. And if we had such a horrible product and people bought it and it wasn't worth anything, where are the lawsuits from the customers? They definitely would have cited that. They're not there because we weren't misleading the markets. We weren't misleading anybody. And when, and then they try to turn a statement against us when we're going to partner up with PGIC, they now say that's evidence that we were misleading. But that's not evidence of that. What we're saying is we're going to go forward with something new and better. We started out with something better, we're going to make it even better. That's what we have here. So I believe that the district court was spot on in his analysis. And I don't think it was incumbent upon him to wade through this and issue an opinion that might have been 70 pages long demonstrating why the statements weren't false, why the confidential informants didn't meet the standards, why the complaints of financial accounting didn't tie out, because they never carried it through. They never showed how it impacted the financial statements. They never showed that there was a material variation in revenue. You're well over your time. Thank you. Thank you. Both sides have used their time. So the case just argued is submitted and we will take a brief recess. All rise.
judges: Wallace, Fernandez, Clifton